[Civ. No. 9886. Fourth Dist., Div. Two. Apr. 26, 1971.]

GERALD S. MEINER, Plaintiff and Appellant, v.
FORD MOTOR COMPANY et al., Defendants and Respondents.

128

## COUNSEL

Victor A. Gables, Hunt, Liljestrom & Wentworth and Vernon W. Hunt, Jr., for Plaintiff and Appellant.

Thompson & Colegate, Don C. Brown, Henry F. Walker, Schell & Delamer, Lee A. Solomon and Charles H. Carpenter for Defendants and Respondents.

## OPINION

**GARDNER, P. J.**—Plaintiff was the driver of a Ford Falcon involved in a two-car collision. He brought a personal injury action against the Ford Motor Company and Holmes Tuttle, Inc., on a strict liability cause of action alleging that the accident was caused by a defect in the steering system of the Falcon. A jury trial resulted in a plaintiff's verdict for $300,000. Defendants' motion for a new trial was granted. Plaintiff appeals from the order granting the new trial.[1]

The decisive issue on this appeal, as we view it, is whether the trial court's specification of reasons for its order granting the new trial met the standard of specificity required by section 657 of the Code of Civil Procedure as construed in *Mercer* v. *Perez,* 68 Cal.2d 104 [65 Cal.Rptr. 315, 436 P.2d 315], and *Scala* v. *Jerry Witt & Sons, Inc.,* 3 Cal.3d 359 [90 Cal.Rptr. 592, 475 P.2d 864].

No attempt will be made to summarize all of the evidence adduced during the complex 14-day trial. The following statement of the essential facts will provide a sufficient setting for proper consideration of the issue raised by this appeal.

### *The accident:*

Plaintiff was employed by a title company in public relations work and at the time of the accident was engaged in the performance of his duties. He was driving his employer's 1962 Ford Falcon which had been purchased new from defendant Holmes Tuttle, Inc. At the time of the accident, it had been driven slightly over 18,000 miles. The vehicle was equipped with standard manual steering apparatus.

The accident occurred about 10 a.m. on Mountain Avenue, a north-south street, at a point about 174 feet north of its intersection with First Street in the Norco area of Riverside County. Plaintiff had been travelling west on First Street and had just turned north onto Mountain Avenue when his vehicle collided virtually head-on with a southbound DeSoto driven by a Mr. Munoz. The paved portion of Mountain Avenue was approximately 21 feet wide. At the point of impact both vehicles were on the westerly half of Mountain Avenue.

Plaintiff gave the following version of the accident: He had been travelling 35 to 40 miles per hour westerly on First Street; as he approached Mountain Avenue he reduced his speed to 10 miles per hour to turn north; he knew that there was an up-grade on Mountain Avenue

---

[1]Defendants have not cross-appealed from the judgment.

for a distance of some 200 feet northerly of its intersection with First Street to the crest of a hill which obscured traffic further to the north so he made his turn onto Mountain as close as possible to its right-hand edge; after completing his turn he made a slight correction to the left; when he tried to turn the vehicle back to the right the steering wheel stuck; and as he was trying to jerk the wheel loose, the DeSoto came over the hill and the vehicles collided head-on.

Mr. Munoz testified that when he first saw the Falcon it was westbound on First Street; because of its speed he at first thought the vehicle was going to proceed on past Mountain Avenue; the Falcon made a turn onto Mountain at a speed of approximately 35 to 40 miles per hour and came directly toward him; Mr. Munoz applied his brake and honked his horn; just prior to the impact the driver of the Falcon attempted to get back to his side of the street but it was too late.

Mrs. Salas and Mrs. Varela were in a car southbound on Mountain Avenue one or two car lengths behind Mr. Munoz. They testified plaintiff made a wide turn onto the wrong side of Mountain Avenue at a speed of 30 to 35 miles per hour and at the time of impact appeared to be attempting to get back into his side of the street.

*Evidence pertaining to defective steering apparatus:*

Plaintiff was interviewed by a California Highway Patrol officer at the hospital shortly after the accident. He told the officer the steering wheel of the Falcon stuck; he was on the wrong side of the street; and the driver of the DeSoto was not at fault.

Plaintiff's co-worker, Mr. Zona, testified that on one occasion while he was using the Falcon some two or three weeks before the accident, the steering wheel locked after he backed out of the driveway of his home; he had to pull the wheel hard right and left several times in order to free it; he thereafter drove the car without experiencing further difficulty and did not report the incident to anyone.

Plaintiff testified he had driven the car some 9,000 miles and had never experienced any difficulty in steering it. However, he testified he had periodically noted a "clunk" sound when he made a right turn so he took the vehicle to a Ford dealer during the "warranty" period to have it checked. The dealer reported that there was nothing wrong.

A highway patrol officer checked the steering wheel of the Falcon at the scene of the accident and found that it turned the front wheels. Defendant's witnesses testified they tested the steering system after the accident and found it to be functional.

Plaintiff's expert witness was Mr. Severy, a research engineer employed by the University of California, Los Angeles, in automotive collision research. He examined the steering mechanism of the Falcon. It was known as a "recirculating ball steering gear" in which 62 ball bearings circulate and recirculate. Mr. Severy described it as an extension of the "worm gear and sector system" in which the ball bearings take the place of the screw thread; he stated that the ball bearings ride within a groove or "race" in proximity to the threads of the worm gear and that about 40 ball bearings go into the "race" and the remainder into a "return guide." He measured the ball bearings with a micrometer. Most of them were within 1/10,000th of an inch of 0.230 inch in diameter, but 10 (7 in one group and 3 in another) were beyond the range of 1/10,000th of an inch, plus or minus, 0.230, with one having a variation of 6/10,000th of an inch. He concluded the design size of the ball bearings was 0.230 inch in diameter. He found "flat spots" on those which exceeded the 1/10,000th of an inch tolerance.

Mr. Severy was of the opinion that there were three possible causes for the steering wheel to lock in the manner described by plaintiff: (1) "flat spots" on the ball bearings, (2) foreign metal particles or chips in the lubricant in the steering gear housing, and (3) a defective turn indicator. He was unable to check the gear lubricant or the turn indicator because they were not available for his inspection. If the latter two causes were eliminated, it was his opinion that "flat spots" on the ball bearings caused the steering wheel to lock. In his opinion the flat spots might not have any effect for a long period of time but when their alignment happened to correspond at any given time, the combination of flat spots could amplify resistance and cause a momentary resistance or lock-up.

Defense experts testified in substance as follows: Mr. Abbott, an official of the company which manufactured ball bearings for the steering apparatus, described in detail the manufacturing, testing, and inspection procedures employed in producing the item. He testified that the ball bearings are run through a precise automatic gauging equipment which measures them for sphericity to a tolerance of one twenty-five millionth of an inch and automatically rejects any ball with a "flat spot"; that the balls are run through the gauging device three times; and that a final visual inspection is made of every ball "under a reflected light on a slate." He testified that a ball bearing with a 6/10,000th of an inch variance would have been automatically rejected by the inspection device.

Mr. Jones, a Ford expert in steering mechanisms, described the design and function of the steering system in question. He testified that out of

15,000,000 steering gear units of the type in question, a lock-up had never been reported to him. In his opinion the steering system could not lock for the reason expressed by Mr. Severy because there was no way the ball bearings could stick to each other or cease to roll. He testified that if 10 of the ball bearings had "flat spots" as described by plaintiff's expert and became "indexed" (flat spot to flat spot), the efficiency of the system would be reduced by about 50 percent, but it would neither lock nor appreciably affect the ability of the driver to turn the wheel. To demonstrate this fact, Mr. Jones testified that Ford conducted an experiment in which ball bearings were ground to create "flat spots"; they were then epoxied together (flat spot to flat spot) and placed in the steering gear component in such a manner that they could not rotate or go into the return guide; the unit was assembled and placed in a car; and the car was then driven 10 miles on a test track. Jones testified that although a 40 percent increased effort was required to turn the wheel, there was no difficulty in turning the car and there was no freezing or lock-up of the steering mechanism. In his opinion, if a lock-up occurred because of alleged defective ball bearings, a rim pull of 50 pounds on the steering wheel would force the ball bearings into the race causing an indentation known as "brinnelling." There was no evidence of "brinnelling" in the races of the steering system in question.

The defense also called Dr. Morelli, a Cal Tech engineering professor. In his opinion the force generated by the turning of the steering wheel would be such that even if all "flat spots" described by plaintiff's expert came up at the same time, a lock-up would not have resulted; that if there had been a lock-up for the reason described by plaintiff's expert a 50-pound rim pull on the steering wheel would have caused "brinnelling" in the races; and if the lock-up was caused by a metal chip, a 50-pound force exerted at the wheel would split the gear box open. He found no evidence of "brinnelling."

*Specification of reasons for the order granting new trial:*

Following entry of the judgment on the jury verdict, defendants moved for a judgment notwithstanding the verdict and for a new trial. By a minute order of May 24, 1968, the court denied the motion for judgment notwithstanding the verdict but granted the motion for a new trial. On May 28, the judge signed and filed a written specification of reasons for the order granting the new trial which were obviously inadequate. On May 31, the judge signed and filed an amended specification of reasons which read in pertinent part:

"a) Insufficiency of the evidence to justify the verdict. After a careful

review of the entire record, and after weighing all of the evidence, the Court is convinced, from the entire record, including reasonable inferences therefrom that the jury clearly should have reached a different verdict. The plaintiff's expert testimony, when weighed against the overwhelming expert testimony introduced by defendant, is completely lacking in probative force to establish the proposition of fact to which it is addressed; namely, that there was a temporary failure of the steering mechanism or that said steering mechanism or any other portion of the vehicle was defective. Further, upon weighing the evidence, resolving conflicting evidence and disregarding the testimony of those whose credibility is doubted, the Court is convinced that the defendant's evidence regarding the manner in which the accident happened is overwhelmingly more persuasive and probable than the evidence introduced by plaintiff."

## I.

The first question is whether the quoted statements of reasons meet the statutory requirement of section 657 of the Code of Civil Procedure requiring "specification of reasons" for granting a new trial as that mandate has been construed in *Mercer* v. *Perez, supra,* 68 Cal.2d 104, and, more recently, in *Scala* v. *Jerry Witt & Sons, Inc., supra,* 3 Cal.3d 359.

We shall consider first the sufficiency of the reasons given for the order granting the new trial on the ground of insufficiency of evidence. This approach is necessary not only because it is the ground upon which defendants rely to support the order granting the new trial, but because of the provisions of section 657 of the Code of Civil Procedure relating specifically to that ground. Section 657 provides that "a new trial shall not be granted upon insufficiency of the evidence" unless "after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision." The final paragraph of the section provides that "(b) on appeal from an order granting a new trial upon the ground of the insufficiency of the evidence . . . or upon the ground of excessive or inadequate damages, it shall be conclusively presumed that said order as to such ground was made only for the reason specified in said order or said specification of reasons, and such order shall be reversed as to such ground only if there is no substantial basis in the record for any of such reasons."

In *Mercer* v. *Perez, supra,* 68 Cal.2d 104, the court reviewed the history and purpose of the 1965 amendment to section 657 requiring articulation of reasons for an order granting a new trial and explained that it was designed to serve two purposes: (1) to encourage careful deliberation by the trial court before ruling on a motion for a new trial,

and (2) to provide a record sufficiently precise to permit meaningful appellate review of the order. (*Mercer* v. *Perez, supra,* pp. 115-116.) In *Mercer,* the only ground for the motion for a new trial was insufficiency of the evidence. No specification of reasons was given by the judge. The court concluded that in the absence of specification of reasons, the statutory presumption compelled the conclusion that the order granting the new trial for insufficiency of the evidence was unsupported by the record.

Following *Mercer,* a number of Courts of Appeal decisions upheld specification of reasons couched in terms of the ultimate fact to be determined. Reasons such as that the evidence established defendant was negligent or that plaintiff was guilty of contributory negligence were held to be adequate. In *Scala* v. *Jerry Witt & Sons, Inc., supra,* 3 Cal.3d 359, the court disapproved those decisions stating that a reason expressed in terms of such "ultimate fact" is merely a restatement of the ground itself and, hence, inadequate. In *Scala,* as in *Mercer,* the sole ground for the motion for new trial was insufficiency of the evidence. The trial judge's specification of reasons was merely "that 'there is no sufficient evidence to show that the defendant was negligent and the evidence does show that plaintiff failed to use ordinary care for his own safety and that failure was a proximate cause of his injuries.' " The court held that the reason was no more than a restatement of the ground for the motion and, hence, insufficient to comply with the statutory requirement. The court then went on to suggest the following guide lines for trial judges in the preparation of specification of reasons:

"We agree, for example, that to comply with section 657 'the trial judge is not necessarily required to cite page and line of the record, or discuss the testimony of particular witnesses,' nor need he undertake 'a discussion of the weight to be given, and the inferences to be drawn from each item of evidence supporting, or impeaching, the judgment.' . . . 'it will be sufficient if the judge who grants a new trial furnishes a concise but clear statement of the reasons why he finds one or more of the grounds of the motion to be applicable to the case before him. No hard and fast rule can be laid down as to the content of such a specification, and it will necessarily vary according to the facts and circumstances of each case.' . . . in instances of doubt the judge would do well to apply the yardstick used in *McLaughlin, Van Zee,* and the case now before us, i.e., by considering whether his proposed specification of reasons will fairly serve the legislative purposes elucidated in *Mercer.*"

 Tested by the standard enunciated in *Mercer* and *Scala,* it is our conclusion that the statement of reasons given in the instant case for the ground of insufficiency of evidence satisfied the minimum requirement

of the statute. Although the statement is not as detailed as in some of those given in the decisions which the Supreme Court in *Scala* referred to at footnote 5, page 370, as containing examples of adequate statements, it does, in our opinion, accomplish the basic statutory purpose.

The judge's statements of reasons, when considered in light of the particular facts and circumstances of the present case, does provide a basis for meaningful review of the order. It informs the parties and the reviewing court that the trial judge was convinced that plaintiff's expert failed either to establish the existence of a defect in the steering mechanism or that the defect to which he testified was the cause of a temporary lock-up of the steering wheel; that the testimony of the defense experts was entitled to greater credence; that with respect to the accident itself the testimony of the defense witnesses was "overwhelmingly more persuasive and probable" than plaintiff's version.

Although the trial was lengthy and complex, the crucial issues were well defined. Plaintiff's expert testified he found "flat spots" on 10 of the ball bearings. Although he mentioned presence of foreign metal particles or chips in the lubricant as a possible cause of lock-up, he conceded there was no evidence to substantiate the existence of such foreign matter in the lubricant. He also found no defect in the turn indicator which he had given as another possibility. He therefore attributed the malfunction to "flat spots" on the ball bearings.

Defendants' experts negated the possibility of "flat spots" by describing the precise testing procedures used in the manufacture of the ball bearings and to the fact that any bearings which exceeded the tolerance to the extent testified by plaintiff's expert would have been automatically rejected. They further testified that even assuming that "flat spots" did exist, such defect would not have caused the steering mechanism to lock. They testified to an experiment which they said confirmed that fact.

With respect to the manner in which the collision occurred, there was a clear conflict between plaintiff's testimony and the testimony of defense witnesses. Plaintiff testified he made a proper turn onto Mountain Avenue; defense witnesses testified he made a wide turn at high speed onto the wrong lane.

As disclosed by the parties' briefs on file, the specification of reasons was sufficient to enable them to discuss intelligently the question whether there was any substantial evidence to support the judge's reasons.

In *Scala, supra,* the court discussed with approval *Van Zee* v. *Bayview Hardware Store,* 268 Cal.App.2d 351 [74 Cal.Rptr. 21]. *Van Zee* was a products liability case involving an exploding aerosol can. Following

a jury verdict for plaintiff, the court granted defendant's motion for a new trial on two grounds, one being insufficiency of the evidence. The specification of reasons for the insufficiency ground was simply ". . . that the evidence does not establish that the . . . aerosol paint can was defective at any time prior to the delivery of said can to the possession of the Plaintiff." The Court of Appeal held that the specification was inadequate. However, it did observe:

"In the case before us, plaintiff presented the testimony of Mr. Washington for the proposition that the seam of the can was of questionable construction and was subject to deterioration with the passage of time. The trial judge may have found this testimony unconvincing. If so, it would take a sentence or two to declare this. Indeed, if the judge had said so, we would have no difficulty, after our review of the record, in sustaining this as one reason for the order, but not one sufficient by itself to justify the order." (*Van Zee* v. *Bayview Hardware Store, supra,* 268 Cal.App.2d 351, 360.) The qualification in the statement quoted was necessitated by the fact that even if the trial judge was not persuaded by plaintiff's expert there was circumstantial evidence which would have justified a finding that the can was in fact defective. The fact that the can did explode and injure plaintiff had been conceded. Plaintiff also testified that the product was used as intended and that he did not expose the can to heat. In these circumstances, a reviewing court reasoned that mere disbelief of plaintiff's expert would not have justified the order granting new trial because circumstantial evidence could have supported a finding that the can was defective.

The statement of reasons in the present case is more specific than that given in *Van Zee, supra.* The statement covers not only the judge's assessment of the expert testimony relating to a defect in the steering mechanism but the evidence relating to the manner in which the collision occurred.

Mr. Justice Tamura, in his dissent, contends that the trial judge should state why he disbelieves a witness or certain testimony. Notwithstanding the possible *desirability* of such action by the trial court if possible (see below), the question before us is whether the trial court is *required* to do so under Code of Civil Procedure section 657, as construed by *Mercer* and *Scala.* We hold that no such requirement is imposed by the code section nor by *Mercer* and *Scala* and that the specification of reasons in connection with the grounds of insufficiency of the evidence was sufficient in the instant case to disclose careful deliberation by the trial court and to permit meaningful appellate review.

As previously indicated, in *Scala* the court condemned the process of specifying the insufficiency of evidence in terms of the "ultimate facts"

such as "defendant's freedom from negligence and plaintiff's guilt of contributory negligence." (3 Cal.3d at pp. 367-370.) In pointing up the inadequacy of the trial court's specification that there was "not sufficient evidence to show that the defendant was negligent," the Supreme Court stated: "If the trial judge determined that the evidence preponderated in favor of the defense position that the tiles were not in fact delivered on the day of the accident, a brief descriptive statement of that fact in the specification of reasons would have sufficed to focus thereon the attention of the appellant and the reviewing court. Without such an explanation it is impossible now to divine whether a finding in this regard was the basis of the court's conclusion that defendant 'was not negligent.' " (3 Cal.3d at p. 368.)

The specification of reasons relating to the ground of insufficiency of the evidence in the case at bench appears to be precisely what was authorized in the quoted language, a brief descriptive statement of the fact that the evidence preponderated in favor of the defense position that the accident was caused not by a failure of the steering mechanism but by plaintiff's negligence in turning his automobile at an excessive rate of speed onto the wrong side of the intersecting street.

These conclusions are further supported by the court's statement in *Scala* that ". . . to comply with section 657 'the trial judge is not necessarily required to cite page and line of the record, *or discuss the testimony of particular witnesses,*' nor need he undertake 'a discussion of the weight to be given, and the inferences to be drawn from each item of evidence supporting, or impeaching, the judgment.' " (3 Cal.3d at p. 370.) [Italics supplied.] If the trial judge is not required to " 'discuss the testimony of particular witnesses,' " *a fortiori,* he is not required to state why he disbelieved the testimony of a particular witness.

While it is true, as pointed out by the dissent, that the trial court's specification of reasons disclosed in *Klinger* v. *Henderson,* 276 Cal.App.2d 774, 776-777 [81 Cal.Rptr. 305], was ideal from the standpoint of the parties and the reviewing court, there, the trial court went far beyond what was minimally required and did discuss the testimony of the defendant and other witnesses. If that sort of specificity is to be required, elementary justice dictates that trial judges and litigants be forewarned so that substantial rights of a party are not lost by the inadvertent failure of a trial judge, over whom the party has no control, to articulate to the satisfaction of an appellate tribunal using standards not fully developed until months or even years after the trial court's action.

In many instances, the articulation by the trial judge of the reasons why he disbelieves a certain witness or certain testimony would promote the

dual objectives of Code of Civil Procedure section 657, as construed by *Mercer* and *Scala*. However, if the trial judge's disbelief of the witness is based on that witness' demeanor and manner of testifying, the trial judge is going to be faced with the impossibility of giving further reasons without going outside the record. This brings us to an issue not discussed in either *Mercer* or *Scala* but which is of great interest and vital importance to trial judges: just what is the trial judge to do when his reason for disbelieving a certain witness is based on that witness' demeanor and manner of testifying?

The law has long recognized the problem of appellate review in the matter of credibility of witnesses based upon their demeanor, and for that reason the rule has evolved that the trier of facts is the sole and exclusive judge of the credibility of witnesses as determined by their demeanor. A written transcript of testimony is but a pallid reflection of what actually happens in a trial court. " 'The best and most accurate record is like a dehydrated peach; it has neither the substance nor the flavor of the fruit before it was dried.' It resembles a pressed flower." (*Broadcast Music* v. *Havana Madrid Restaurant Corp.*, 175 F.2d 77, 80.) "The cold record cannot give the look or manner of the witnesses; their hesitations, their doubts, their variations of language, their precipitancy, their calmness or consideration. A witness may convince all who hear him testify that he is disingenuous and untruthful, and yet his testimony when read, may convey a most favorable impression." (*Maslow* v. *Maslow*, 117 Cal. App.2d 237, 243 [255 P.2d 65].) "There are many factors aiding in a reasonable conclusion which are presented to the trier of facts in the first instance and not available to one going over the cold record. There is what might be called the 'feel' of the case. This embraces a consideration of the witnesses, the manner in which they testify and their general attitude in the court room." (*Cummings* v. *Kendall*, 41 Cal.App.2d 549, 555 [107 P.2d 282].) " '. . . one witness may give testimony that reads in print, here, as if falling from the lips of an angel of light, and yet not a soul who heard it, nisi, believed a word of it; and another witness may testify so that it reads brokenly and obscurely in print, and yet there was that about the witness that carried conviction of truth to every soul who heard him testify. . . .' (Citation.)" (*Riddle* v. *Fiano*, 194 Cal.App.2d 684, 693 [15 Cal.Rptr. 248].)

On the cold record a witness may be clear, concise, direct, unimpeached, uncontradicted—but on a face to face evaluation, so exude insincerity as to render his credibility factor nil. Another witness may fumble, bumble, be unsure, uncertain, contradict himself, and on the basis of a written transcript be hardly worthy of belief. But one who sees, hears and observes him may be convinced of his honesty, his integrity, his reliability. All of

this is because a great deal of that highly delicate process we call evaluating the credibility of a witness is based on what might be called, for lack of a better word, "intuition"—that intangible, inarticulable capacity of one human being to evaluate the sincerity, honesty and integrity of another human being with whom he comes in contact. There is no way of knowing or proving how much of the testing process is encompassed in the "traditional" tests of credibility such as provable bias or interest, contradiction or impeachment, all demonstrable on the record, and how much of that evaluation process comes from the purely subjective reaction of the trier of facts to the attitude, demeanor and manner of testifying of the witness—not demonstrable on the record. Evidence Code, section 780, recognizes this wherein it provides, in pertinent part: ". . . the court or jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony at the hearing, including but not limited to any of the following:

"(a) His demeanor while testifying and the manner in which he testifies."

None of this demeanor or manner of testifying appears on the record and, therefore, the matter of the credibility of witnesses is not susceptible to that precise or exact appellate review which are matters susceptible to objectively assessable criteria.

In footnote 3, page 114, of *Mercer* v. *Perez, supra,* 68 Cal.2d 104, appears a quotation from the Washington court in *Knecht* v. *Marzano,* 65 Wn.2d 290 [396 P.2d 782, 784-785], which indicates that "objectively assessable criteria" must be used by the trial court in ruling on the motion for new trial, that the feelings and hunches of the trial judge are not amenable to objective evaluation and meaningful appellate review, that lacking standards of objectively assessable criteria in the granting of such a motion, the trial court's actions would be nonreviewable. "In essence no appeal whatsoever."[2] It is the concept of "objectively assessable criteria," apparently accepted by the dissent, which is troublesome.

 It appears to us that a statement by the trial judge that he disbelieved a particular witness because of that witness' demeanor and manner of testifying is sufficient. If not, he may be forced into the situation of attempting to explain the unexplainable, using as the basis for his

---

[2]The expression "objectively assessable criteria" is that type of an expression which has a certain catchy attractiveness which if not put into proper context lends itself to the almost inevitable process of becoming dogma. In *Knecht,* the trial judge gave a completely meaningless reason for the granting of the new trial and the ruling of the Supreme Court in setting aside his order is unassailable. But while the phrase "objectively assessable criteria" certainly has a place in the lore of appellate review, it should not be elevated to gospel proportions, particularly in matters affecting credibility of witnesses—matters which have never been susceptible to meaningful appellate review by "objectively assessable criteria."

articulation matters outside the record. The task would be to attempt, with such literary skill as he might possess, to describe the demeanor of the witness—his manner, his intonations, his grimaces, his gestures, his movements, his hesitations, his tone of voice, his bearing, his delivery, the expression on his face—all of which would be outside the record.

If the trial judge's reason for disbelieving a witness is the demeanor and manner of that witness testifying, he should so state. This would at least assure the appellate court of the trial court's mature and careful reflection. Additionally, if the trial court should specify some other reason for disbelieving a witness (see Evid. Code, § 780), the reviewing court would at least know that the disbelief was not based upon matters relating to the demeanor of the witness. Nevertheless, if the trial judge gives as his reason the demeanor and manner of testifying of a witness, he should not be forced into presenting to the reviewing court his extra-record impressions of that demeanor and manner of testifying. Admittedly, in this situation there can be no review of this particular reason by "objectively assessable criteria"; however, a rule which would compel a trial court to describe what it was about a witness' demeanor and manner of testifying that caused him to disbelieve the witness forces him outside the record and again renders review meaningless. Worse, it would result in a testing process on review in which the criterion would be the literary talents of the trial judge in describing his extra-record evaluation of a witness' testimony. When a trial judge gives as his reason that he disbelieves a certain witness because of that witness' demeanor and manner of testifying, he need and should not say more.

## II.

■ Having concluded that the specification of reasons for the ground of insufficiency of the evidence was adequate, the question remains whether there is any "substantial basis in the record" for the reasons given.

■ On a motion for new trial on the ground of insufficiency of the evidence the judge may disbelieve witnesses, reweigh the evidence, and draw reasonable inferences therefrom contrary to those of the trier of fact (*Klinger* v. *Henderson, supra,* 276 Cal.App.2d 774, 777; *Ridge* v. *Calabrese Supply Co.,* 263 Cal.App.2d 546 [69 Cal.Rptr. 844]) and the order may be reversed " '. . . only where it can be said as a matter of law that there is *no* substantial evidence to support a contrary judgment' . . . ." (*Yarrow* v. *State of California,* 53 Cal.2d 427, 434 [2 Cal.Rptr. 137, 348 P.2d 687], as quoted in *Mercer* v. *Perez, supra,* 68 Cal.2d 104, 114.) [Original italics.]

Plaintiff contends that the 1965 amendments to section 657 of the Code of Civil Procedure contemplate a broader scope of appellate review. *Mercer* v. *Perez, supra,* implies that the rule in *Yarrow* v. *State of California, supra,* remains in force under the 1965 amendments to section 657. (See *Mercer* v. *Perez, supra,* p. 114.) Moreover, the contention has been expressly rejected by several decisions of the Court of Appeal in which hearings have been denied by the Supreme Court. (*Dixon* v. *St. Francis Hotel Corp.,* 271 Cal.App.2d 739, 742 [77 Cal.Rptr. 201]; *Kramer* v. *Boynton,* 258 Cal.App.2d 171, 174 [65 Cal.Rptr. 669].)

■ From the evidence we have heretofore summarized, it is apparent that there is substantial evidence in support of the reasons given by the trial judge for the order granting new trial on the ground of insufficiency of the evidence.

### III.

■ Turning to the ground of excessive damages, the reason given was that "plaintiff's physician testified that plaintiff's physical condition was such that he could accept various types of employment and that he had made no effort to seek such employment or otherwise minimize damages in any way" and that the court therefore felt the jury acted under the influence of passion or prejudice against the defendant and sympathy for the plaintiff.

There is no substantial basis in the record to support the order granting a new trial for excessive damages for the reason specified.

Plaintiff's physician testified that it was not until some time in February 1968 (a week or two prior to trial) that plaintiff had recovered to such an extent that he could accept employment of a limited nature. Plaintiff's failure to minimize damages by seeking employment for that limited period would not have justified setting aside the verdict as being excessive. Plaintiff's evidence indicated that he had suffered internal as well as neck, back and dental injuries. There was evidence that he was hospitalized on ten different occasions over a period of four years by reason of injuries sustained in the accident. He underwent kidney surgery, two laminectomies, and a spinal fusion. In the foregoing circumstance, the mere failure to mitigate damages by obtaining some limited employment for a two-week period would not, in and of itself, support the ground that damages were excessive. Since it must be "conclusively presumed" that the order granting a new trial for excessive damages "was made only for the reasons specified," the order cannot be sustained on that ground on the reason specified.

## IV.

As indicated, the trial judge's order was allegedly based on other grounds.

The statute mandates that a reviewing court must affirm a new trial order if it should have been granted "upon any ground stated in the motion whether or not specified in the order or specification of reasons," except insufficiency of the evidence or excessive or inadequate damages. (Code Civ. Proc., § 657; *Treber* v. *Superior Court,* 68 Cal.2d 128, 133-134 [65 Cal.Rptr. 330, 436 P.2d 330]; *S. F. Bay Area Rapid Transit Dist.* v. *Mc-Keegan,* 265 Cal.App.2d 263, 270-271 [71 Cal.Rptr. 204]; *Tagney* v. *Hoy,* 260 Cal.App.2d 372, 374-375 [67 Cal.Rptr. 261].) However, in the present case defendants rely entirely on the grounds of insufficiency of the evidence and excessive damages; they have made no attempt to show that the order granting the new trial should be affirmed on any of the other grounds stated in the motion. ■ "[T]he burden is on the movant to advance any grounds upon which the order should be affirmed, and a record and argument to support it." (See *People* ex rel. *Dept. Pub. Wks.* v. *Hunt,* 2 Cal.App.3d 158, 162 [82 Cal.Rptr. 546]; *Gaskill* v. *Pacific Hosp. of Long Beach,* 272 Cal.App.2d 128, 130-132 [77 Cal.Rptr. 373]; *Tagney* v. *Hoy, supra,* 260 Cal.App.2d 372, 376-377.)

This, the defendant has not done in the instant case. Nevertheless, we have examined the record and find that it fails to support the order made on any of the additional grounds.

The order granting the new trial is affirmed.

Kaufman, J., concurred.

**TAMURA, J.,** Concurring and Dissenting.—The majority has decided that the order can be sustained on the ground of insufficiency of the evidence to support the verdict but not on any of the other grounds stated in the motion. I agree with respect to the other grounds, but respectfully dissent as to the ground of insufficiency of the evidence. In my opinion the reasons given in support of that ground were inadequate and the order must therefore be reversed.

The reasons contained in the judge's initial specification filed on May 27 which is set out below were, as the majority notes, manifestly inadequate.[1] On May 31 he filed an amended specification. The controlling

---

[1]The May 27 specification of reasons read:
"(a) Insufficiency of the evidence to justify the verdict. After a careful review of the entire record, and after weighing all of the evidence, the Court is convinced,

question is whether the reasons given in the amended specification for two of the grounds—insufficiency of the evidence and excessive damages— meet the standard of specificity mandated by section 657 of the Code of Civil Procedure as that section was construed in *Mercer* v. *Perez,* 68 Cal. 2d 104 [65 Cal.Rptr. 315, 436 P.2d 315] and *Scala* v. *Jerry Witt & Sons, Inc.,* 3 Cal.3d 359 [90 Cal.Rptr. 592, 475 P.2d 864]. It is my opinion that they did not and that the order may not be supported on any of the remaining grounds.[2]

I

The four new paragraphs added to section 657 of the Code of Civil Procedure in 1965 prescribed "substantially new procedures for granting a motion for new trial and for reviewing such an order on appeal."[3] (*Scala*

---

from the entire record, including reasonable inferences therefrom, that the jury clearly should have reached a different verdict.

"(b) Irregularity of the proceedings of the jury, by which the defendant was prevented from having a fair trial. The jury was guilty of prejudicial irregularity in performing an improper experiment upon one of the exhibits, thereby preventing the said defendant from having a fair trial.

"(c) Misconduct of the jury, as hereinabove set forth.

"(d) Errors in law occurring at the trial, and excepted to by the party making the application. The court is satisfied that a number of rulings relating to the admissibility of evidence were clearly erroneous.

"(e) Excessive damages. After weighing the evidence, the Court is convinced, from the entire record, including reasonable inferences therefrom, that the jury clearly should have reached a different verdict.

"(f) For the reasons hereinabove set forth, the Court is convinced that the verdict is against the law."

[2]New trial was granted on all statutory grounds except "accident or surprise" and "newly discovered evidence."

[3]The final four paragraphs of section 657, Code of Civil Procedure, provide:

" . . . . . . . . . . . . .

"When a new trial is granted, on all or part of the issues, the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated.

"A new trial shall not be granted upon the ground of insufficiency of the evidence to justify the verdict or other decision, nor upon the ground of excessive or inadequate damages, unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision.

"The order passing upon and determining the motion must be made and entered as provided in Section 660 and if the motion is granted must state the ground or grounds relied upon by the court, and may contain the specification of reasons. If an order granting such motion does not contain such specifications of reasons, the court must, within 10 days after filing such order, prepare, sign and file such specification of reasons in writing with the clerk. The court shall not direct the attorney for a party to prepare either or both said order and said specification of reasons.

"On appeal from an order granting a new trial the order shall be affirmed if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons, except that (a) the order shall not be

v. *Jerry Witt & Sons, supra,* 3 Cal.3d 359, 363.) The pertinent portions of those paragraphs, with their 1967 clarifying amendments, provide that the court must specify the "reason or reasons for granting the new trial upon each ground stated"; that a new trial "shall not be granted" upon the ground of insufficiency of the evidence or excessive or inadequate damages, "unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the . . . jury clearly should have reached a different verdict. . . ."; that if the order granting the new trial does not specify the reasons, "the court must, within 10 days after filing such order, prepare, sign and file such specification of reasons in writing with the clerk"; the court may not direct the attorney for a party to prepare the specification of reasons; and that: "on appeal from an order granting a new trial . . . upon the ground of the insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive or inadequate damages, it shall be *conclusively presumed that said order as to such ground was made only for the reasons specified* in said order or said specification of reasons, and such order shall be reversed as to such ground only if there is no *substantial basis in the record for any of such reasons."* (Italics supplied.)

In *Mercer* v. *Perez, supra,* 68 Cal.2d 104, the court concluded that the 1965 amendments requiring articulation of reasons were designed to serve a dual purpose: (1) To foster mature and careful reflection by the trial court before ruling on a motion for new trial, and (2) to make the right of appeal from the order more meaningful. In order to give effect to the new scope of appellate review contemplated by the amendments, the court declared: ". . . if the ground relied upon is 'insufficiency of the evidence' the judge must briefly recite the respects in which he finds the *evidence* to be legally inadequate; no other construction is consonant with the conclusive presumption on appeal that the order was made 'only for the reasons specified.' Phrasing the requirement in terms of the codification of the trial judge's power in the second paragraph of the amendments . . . , such an order must briefly identify the portion of the *record* which convinces the judge 'that the court or jury clearly should have reached a different verdict or decision.' " (*Mercer, supra,* p. 116; italics supplied.)

---

affirmed upon the ground of the insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive or inadequate damages, unless such ground is stated in the order granting the motion and (b) on appeal from an order granting a new trial upon the ground of the insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive or inadequate damages, it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order or said specification of reasons, and such order shall be reversed as to such ground only if there is no substantial basis in the record for any of such reasons."

A number of appellate court decisions after *Mercer, supra,* upheld specifications of reasons couched merely in terms of the ultimate fact to be determined. In *Scala* v. *Jerry Witt & Sons, Inc., supra,* 3 Cal.3d 359, 366, the court disapproved those decisions stating that a "reason" which merely recites that "under the court's view of the evidence 'the defendant was not negligent' or 'the plaintiff was negligent' is of little if any assistance to the appellant or to the reviewing court." Such "reasons" were held to be nothing more than restatement of the ground itself and, hence, inadequate. The court observed that some courts of appeal paraphrased the *Mercer* requirement that the trial judge "briefly identify the deficiencies he finds in 'the evidence' or 'the record' or . . . 'the proof'—rather than merely in 'the issues' or 'the ultimate facts,' ". . . by subtly shifting the emphasis to "identification of deficiencies in 'the prevailing party's case' " rather than in the *evidence* or the *record. (Scala* v. *Jerry Witt & Sons, Inc., supra,* 3 Cal. 3d 359, 367.) The court concluded that while a trial judge is " 'not necessarily required to cite page and line of the record, or discuss the testimony of particular witnesses,' nor need he undertake 'a discussion of the weight to be given, and the inferences to be drawn from each item of evidence supporting, or impeaching, the judgment,' . . . he must do more than in effect reiterate the ground of his ruling." *(Scala* v. *Jerry Witt & Sons, Inc., supra,* 3 Cal.3d 359, 370.)

In the present case, the judge gave the following reasons for ordering a new trial on the ground of insufficiency of the evidence: "After a careful review of the entire record, and after weighing all of the evidence, the Court is convinced, from the entire record, including reasonable inferences therefrom, that the jury clearly should have reached a different verdict. The plaintiff's expert testimony, when weighed against the overwhelming expert testimony introduced by defendant, is completely lacking in probative force to establish the proposition of fact to which it is addressed; namely, that there was a temporary failure of the steering mechanism or that said steering mechanism or any other portion of the vehicle was defective. Further, upon weighing of the evidence, resolving conflicting evidence and disregarding that testimony of those whose credibility is doubted, the Court is convinced that the defendant's evidence regarding the manner in which the accident happened is overwhelmingly more persuasive and probable than the evidence introduced by plaintiff."

The reasons fall short of the standard of specificity required by *Mercer, supra,* and *Scala, supra.* The preliminary statement is merely a restatement of the ground and obviously was neither intended to be nor constitutes a reason. The "reasons" which follow are to the effect that in the judge's assessment of the evidence, plaintiff's expert testimony was "completely lack-

ing in probative force" to prove a defect or failure in the steering system, and defendant's evidence respecting the cause of the accident was "overwhelmingly more persuasive and probable" than that adduced by plaintiff. Those "reasons" merely tell us that the judge felt that plaintiff failed to prove that the steering system was defective or that the accident was caused by a defective vehicle. A similar specification of reasons was held to be inadequate in *Van Zee* v. *Bayview Hardware Store,* 268 Cal.App.2d 351 [74 Cal.Rptr. 21], a products liability case arising out of the explosion of an allegedly defective aerosol paint can. Following a jury verdict for plaintiff, the court granted a defense motion for a new trial. One of the two grounds was insufficiency of the evidence. The reason given by the trial judge was: "[t]he evidence is insufficient to support the verdict in that the evidence does not establish that the . . . aerosol paint can was defective at any time prior to the delivery of said can to the possession of the Plaintiff." The Court of Appeal held that the "reason" was merely a statement that plaintiff failed to prove an ultimate fact in issue and as such was inadequate. That approach was commended by the Supreme Court in *Scala, supra.* Though phrased differently, the reasons in the present case are equally deficient in providing a basis for the appellate review contemplated by the 1965 amendments to section 657 of the Code of Civil Procedure.

The specification in the persent case, as in *Van Zee, supra,* does not comply with the *Mercer* requirement that the trial judge "briefly recite the respects in which he finds the *evidence* to be legally inadequate; . . ." (Italics supplied.) (*Mercer* v. *Perez, supra,* 68 Cal.2d 104, 116). In *Scala* the court stated that "perhaps the more useful yardstick to an appellate court for measuring the adequacy of the specification" is whether it serves the statutory objective of making the right to appeal from an order granting a new trial on the ground of insufficiency of the evidence meaningful. (*Scala* v. *Jerry Witt & Sons, Inc., supra,* 3 Cal.3d 359, 366.) So measured, in my opinion the present specification is inadequate. It " 'amounts to no more than an invitation to search the record. . . .' " (*Mercer* v. *Perez, supra,* 68 Cal.2d 104, 116-117, quoting from *Greenwood* v. *Bogue,* 53 Wn.2d 795 [337 P.2d 708, 709].) It is impossible to determine whether there is "any substantial basis in the record" for the trial judge's reasons without examining "the entire body of the testimony and exhibits introduced at trial" (*Mercer* v. *Perez, supra,* p. 114), and speculating as to why the judge felt that plaintiff's expert testimony was "completely lacking in probative force" and defendant's evidence regarding the manner in which the accident occurred was "overwhelmingly more persuasive and probable" than plaintiff's evidence. The "reasons" do not tell us whether the judge was dissatisfied with the expert's qualifications, the extent of his investigation, the reasons he

gave for his opinion, or his credibility as a witness.[4] It certainly cannot be said that the evidence failed, as a matter of law, to support an implied finding of a defective steering system. Mr. Severy testified he measured the ball bearings with a micrometer and found 10 of them varied from the design size and had "flat spots." His testimony was controverted only inferentially by defense witnesses' testimony that the inspection devices and procedures used in production would have rejected ball bearings having such defects; there was no testimony by defense experts that they made actual measurements of the ball bearings in question and found Mr. Severy's measurements to be erroneous. As to the accident, the judge stated that "disregarding [the] testimony of those whose credibility is doubted," defendant's evidence was "overwhelmingly more persuasive." We are left to speculate whose testimony he disbelieved and why. Did he disbelieve both plaintiff and Mr. Zona who testified to an earlier locking of the steering wheel? In sum, as aptly stated in *Van Zee* v. *Bayview Hardware Store, supra,* 268 Cal.App.2d 351 362, we are left "in the position in which reviewing courts were before the amendments to section 657, as described in the *Mercer* case: 'The appellate court could find itself considering alleged insufficiencies totally unrelated to those relied upon by the trial judge; and without further elucidation of the order, the principle that an abuse of discretion can not be found in cases in which the evidence is in conflict and a different verdict could have been reached [citation] "constitutes an iron curtain, cutting off any adequate review of whether or not there was *any* reason for the trial judge to set aside the verdict of the jury and grant a new trial." (Italics added.) (*Coppo* v. *Van Wieringen* (1950) 36 Wn.2d 120 [217 P.2d 294, 297].)' (68 Cal.2d at p. 114.)"

The specification in the instant case simply expresses the fact the judge disbelieved plaintiff's expert as to the claimed defect in the steering system and doubted the veracity of plaintiff's version of the accident.

In passing upon a motion for a new trial, a judge admittedly has the authority to disbelieve a witness, reweigh the evidence and draw reasonable inferences therefrom contrary to those drawn by the jury. (*Klinger* v. *Henderson,* 276 Cal.App.2d 774, 777 [81 Cal.Rptr. 305]; *Ridge* v. *Calabrese Supply Co.,* 263 Cal.App.2d 546, 552 [69 Cal.Rptr. 844]; see *Mercer* v. *Perez, supra,* 68 Cal.2d 104, 112). The judge may disbelieve a witness even though his testimony is uncontradicted "if there is any rational ground for doing so." (*Blank* v. *Coffin,* 20 Cal.2d 457, 461 [126 P.2d 868].) But in my opinion, if a judge determines that a new trial should be ordered for

---

[4]For an excellent statement of reasons for granting a new trial for insufficiency of the evidence in a case involving expert testimony, see *Klinger* v. *Henderson,* 276 Cal.App.2d 774, 776-777 [81 Cal.Rptr. 305].)

insufficiency of the evidence because he disbelieved a witness, he ought to state briefly those matters of record which, as expressed in section 780 of the Evidence Code, had "any tendency in reason to . . . disprove the truthfulness" of the witness. (As to matters going to a witness' credibility, see Evid. Code, § 780; Witkin, Evidence (2d ed. 1966) pp. 1027-1033.) Only then may a reviewing court determine whether "there is any substantial basis in the record" for the judge's reasons.

My colleagues, if I interpret the majority opinion correctly, are of the view that a simple statement to the effect that the evidence was insufficient to support the verdict because, in the judge's view, the testimony of the witnesses for the party against whom the verdict was rendered was entitled to greater credibility than that of the witnesses for the other party, ought to be a sufficient reason.[5] It is suggested that the judge may have evaluated credibility on the basis of the witnesses' demeanor and since such considerations would not be reflected by the record, further explanation by the judge could not make appellate review more meaningful. The majority appears to concede, however, that if disbelief was based on demeanor considerations, the trial judge should at least say that much.

In the present case, the specification does not state that the judge doubted the credibility of plaintiff and his witnesses because of their demeanor on the stand. In the absence of such statement, it must be presumed that disbelief was not based upon such ground. It must be "conclusively presumed" on appeal that the order was made "only for the reasons specified." (Code Civ. Proc., § 657, 4th para.)

I am mindful, of course, as the majority points out, that in judging the credibility of a witness the trier of fact may consider "[h]is demeanor while testifying and the manner in which he testifies" (Evid. Code, § 780, subd. (a); *Davis* v. *Judson,* 159 Cal. 121, 128 [113 P. 147]; *Kilstrom* v. *Bronnenberg,* 110 Cal.App.2d 62, 64-65 [242 P.2d 65]; *La Jolla Casa de Manana* v. *Hopkins,* 98 Cal.App.2d 339, 345-346 [219 P.2d 871]; see Witkin, Evidence (2d ed. 1966) pp. 1031-1032), and that such criteria for evaluating credibility are not normally reflected by the record. (*Riddle* v. *Fiano,* 194 Cal.App.2d 684, 693-694 [15 Cal.Rptr. 248]). Nevertheless, though not a matter of record, the demeanor of a witness *while testifying* and the *manner in which he testifies* are always assumed to be *in evidence.*

---

[5]In *Van Zee* v. *Bayview Hardware Store, supra,* 268 Cal.App.2d 351, 360, the court observed that the judge may have found the expert's testimony to be "unconvincing," but it would have taken only a sentence or two to so state and that if the judge had said so "we would have no difficulty . . . in sustaining this as one reason for the order. . . ." I do not take this to mean that the court intended to hold that a mere statement that the testimony was unconvincing, without more, would have been sufficient.

(3A, Wigmore, Evid. (1970 ed.) § 946, p. 783.) It is therefore entirely proper for the judge to consider such matters in assessing the credibility of witnesses when passing on a motion for new trial on the ground of insufficiency of the evidence. However, *Mercer, supra,* requires the trial judge to briefly identify in his reasons the portions of the *record* or the *evidence* deemed to be insufficient. Since demeanor of a witness while testifying or manner of testifying is *evidence* in the case, if the judge's reason for granting a new trial for insufficiency of the evidence is his disbelief of a witness for the party in whose favor the verdict was returned, he should so state and briefly indicate what it was about the witness' demeanor while testifying or his manner of testifying that cast doubt on his veracity. (See Comment, 9 Santa Clara Law. 119, 130-131.) Although the accuracy of the judge's observations concerning the witness' demeanor could not be reviewed against the record, the reason would at least disclose whether disbelief was based upon a rational ground. (See *Blank* v. *Coffin, supra,* 20 Cal.2d 457, 461.) Appellate review would thereby be made more meaningful and, more importantly, the other statutory objective—careful and mature deliberation before ruling on a motion for new trial—would be served by discouraging orders for new trial merely on subjective feelings, hunches, or intuition. I do not share the majority's view that such reasons would be impossible to articulate. If a judge is of the view that a witness' demeanor while testifying or his manner of testifying rendered his testimony untrustworthy, he ought to be able to express briefly why he came to that conclusion, especially if disbelief is based on a rational ground which, of course, should be the only ground.

To hold that a reason which in effect merely states that the evidence was insufficient because witnesses for the party against whom the verdict was rendered were entitled to greater credibility than those for the other side would reduce the requirement of stating reasons to a mere legal formality and would frustrate the dual salutory purposes of the 1965 amendments to section 657 of the Code of Civil Procedure. The following passage from the opinion of the Washington Supreme Court in *Knecht* v. *Marzano,* 65 Wn. 2d 290 [396 P.2d 782, 784-785] (quoted in *Mercer* v. *Perez, supra,* 68 Cal. 2d 104, 114, fn. 3) is particularly apposite: "Although 'manifest abuse of discretion' is a formidable and inferentially an effective appellate standard or mechanism for testing the exercise of trial judge discretion in some areas, its use or function seems debatable, to say the least, in the absence of a requirement that produces objectively assessable criteria, reasons or facts respecting the granting of a new trial, rather than ones assessable only subjectively in terms of describing or revealing nothing more than the feelings or hunches of the trial judge to the effect that 'substantial justice has not

been done.' Stated somewhat differently, discretion equated only with the feelings and hunches of the trial judge is not amenable to objective evaluation and appellate review, for the end result would be nonreviewable trial judge discretion—in essence, no appeal whatsoever."

For the foregoing reasons, it is my opinion that the reasons given for the order granting new trial on the ground of insufficiency of the evidence in the present case were inadequate and that the order cannot be sustained on that ground. In fairness to the trial judge it should be noted that under certain appellate court decisions in force at the time he made his order, the reasons might have been adequate and that those decisions were disapproved only after the pendency of this appeal in *Scala, supra.* However, in *Scala* v. *Jerry Witt & Sons, Inc., supra,* 3 Cal.2d 359, 371, the court rejected a request that that decision be made "purely prospective" by saying: "Today's decision is no new departure in the law, but simply reiterates the *Mercer* construction of the statutory intent and the manner of translating that intent into action."

## II

The majority has determined that there is no substantial basis in the record to support the order granting a new trial for excessive damages for the reason specified by the trial judge. I agree. The record reveals that, according to plaintiff's physician, plaintiff was unable to perform work of even a limited nature until a week or two before trial. Hs failure to seek employment for that limited period did not justify a determination that the verdict was excessive.

## III

The question remains whether the order may be affirmed on any of the remaining grounds upon which the motion was made and granted.

While an order granting a new trial must be affirmed if it should have been granted "upon any ground stated in the motion, whether or not specified in the order or specification of reasons," (except insufficiency of the evidence or excessive or inadequate damages) (Code Civ. Proc., § 657; *Treber* v. *Superior Court,* 68 Cal.2d 128, 133-134 [65 Cal.Rptr. 330, 436 P.2d 330]; *S. F. Bay Area Rapid Transit Dist.* v. *McKeegan,* 265 Cal.App. 2d 263, 270-271 [71 Cal.Rptr. 204]; *Tagney* v. *Hoy,* 260 Cal.App.2d 372, 374-375 [67 Cal.Rptr. 261]) the burden is on the moving party to provide a record and argument supportive of the ground or grounds upon which the order should be affirmed. (*People* ex rel. *Dept. Pub. Wks.* v. *Hunt,* 2 Cal.App.3d 158, 162 [82 Cal.Rptr. 546]; *Gaskill* v. *Pacific Hosp. of Long*

*Beach,* 272 Cal.App.2d 128, 130-132 [77 Cal.Rptr. 373]; *Tagney* v. *Hoy, supra,* 260 Cal.App.2d 372, 376-377.) Defendants in the instant case defend the order only on the two grounds heretofore discussed. I, therefore, limit my discussion of the remaining grounds to the following brief comments:

Two of the grounds upon which the motion was made and granted were irregularity in the proceedings of the jury and misconduct of the jury. The reason given by the trial judge in support of those grounds was "The jury was guilty of prejudicial irregularity in performing an improper experiment upon one of the exhibits out of the presence of the Court and during the course of their deliberations, thereby preventing the said defendant from having a fair trial."

Although the affidavits which were apparently filed in support of those grounds are appended to plaintiff's brief, they are not a part of the record on appeal nor has there been an augmentation to include them. The burden was on defendants, the movants, to provide a record and argument to show that the new trial order should be affirmed on the grounds stated. (*People* ex rel. *Dept. Pub. Wks.* v. *Hunt, supra,* 2 Cal.App.3d 158, 162.) Having failed to do so, it must be concluded that the record does not support those grounds.

However, even if the affidavits appended to plaintiff's brief were deemed a part of the record, they do not support the grounds of misconduct of the jury or irregularity in its proceedings.

Defendants apparently submitted three affidavits, two by their attorneys and one by their attorneys' secretary. They were to the effect that after the verdict was returned, affiants had a conversation with Mr. Kuser, one of the jurors, who told them that while the jury was deliberating he (Mr. Kuser), at the instance of several women jurors, removed the ball bearings from the exhibit introduced by Ford and by remanipulating them in the race, rendered the exhibit inoperable.

Plaintiff moved to strike the affidavits on the ground they constituted an attempt by a juror to impeach a jury verdict and on the further ground they constituted an attempt to impeach a jury verdict by hearsay evidence. Plaintiff's motion was denied whereupon plaintiff submitted affidavits from the jury foreman and Mr. Kuser. The foreman stated that after the jury had voted on the issue whether there had been a lock-up of the steering mechanism, he saw Mr. Kuser manipulating the ball bearings in the exhibit in

question. The foreman stated that the experiment had no effect on the jury verdict because they had already voted on the question of liability. Mr. Kuser's declaration corroborated the foreman's statement.

Plaintiff's contention that defendant's affidavits were inadmissible to impeach the jury verdict and should have been stricken must be sustained. It has been repeatedly held that a jury vedict may not be impeached by hearsay affidavits. (*People* v. *Yeager,* 194 Cal. 452, 485 [229 P. 40]; *Van Zee* v. *Bayview Hardware Store, supra,* 268 Cal.App.2d 351, 354; *People* v. *Schmitt,* 155 Cal.App.2d 87, 117 [317 P.2d 673]; *Marinucci* v. *Bryant,* 151 Cal.App.2d 298, 306 [311 P.2d 622].) The recent case of *People* v. *Hutchinson,* 71 Cal.2d 342, 349-350 [78 Cal.Rptr. 196, 455 P.2d 132], holding that section 1150 of the Evidence Code authorizes use of juror's affidavits to show objective facts occurring in a jury room which improperly influenced a jury did not modify that rule. (See *People* v. *Spelio,* 6 Cal.App. 3d 685, 689 [86 Cal.Rptr. 113].) Section 1150 of the Evidence Code provides in part: "(a) Upon an inquiry as to the validity of a verdict, *any otherwise admissible evidence* may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined." (Italics supplied.)

The reason given by the judge for granting a new trial on the ground of errors in law occurring at the trial was: "The Court is satisfied that a number of rulings relating to the admissibility of evidence were clearly erroneous." The reason is patently inadequate. Moreover, neither the motion for the new trial nor defendants' brief on appeal indicate what errors of law, if any, occurred at trial. In these circumstances it is not incumbent upon this court to make an independent search of the entire record for possible errors of law.

The final ground upon which the new trial was granted was that the verdict was against the law. "When a general verdict only is returned it can be said to be 'against [the] law' only when it is unsupported by any substantial evidence, i.e., when the entire evidence is such as would justify a directed verdict against the party in whose favor the verdict is returned. '[T]he words "against [the] law" do not import a situation in which the court weighs conflicting evidence and merely finds a balance against the judgment.' " (*Tagney* v. *Hoy, supra,* 260 Cal.App.2d 372, 376; *Bray* v. *Rosen,* 167 Cal.App.2d 680, 683-684 [335 P.2d 137]; see *Gaskill* v. *Pa-*

*cific Hosp. of Long Beach, supra,* 272 Cal.App.2d 128, 130; *Thompson v. Guyer-Hays,* 207 Cal.App.2d 366, 375 [24 Cal.Rptr. 461].) The evidence reviewed in the majority opinion clearly reveals that the verdict was not "against the law" in the foregoing sense.

I would reverse the order granting the new trial.

Appellant's petition for a hearing by the Supreme Court was denied June 23, 1971. Peters, J., Mosk, J., and Sullivan, J., were of the opinion that the petition should be granted.