Filed 9/4/18; Certified for Publication 9/26/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| TERESA MARTINE, | C076998 |
| Plaintiff and Appellant, | (Super. Ct. No. SC20110037) |
| v. | |
| HEAVENLY VALLEY LIMITED PARTNERSHIP, | |
| Defendant and Respondent. | |

Plaintiff Teresa Martine (Martine) hurt her knee while skiing at Heavenly Valley Ski Resort and was being helped down the mountain by a ski patrolman when the rescue sled in which she was riding went out of control and hit a tree. Martine sued resort owner Heavenly Valley Limited Partnership (Heavenly) for negligence and for damages arising from her injuries.

Heavenly moved for summary judgment arguing that there was no evidence that its employee, a ski patrolman named Gustav Horn (Horn) had been negligent in taking

1

Martine down the mountain thus causing the sled to hit the tree and that, in any event, Martine's action is barred by the doctrine of primary assumption of risk.

The trial court granted Heavenly's motion and entered judgment accordingly. Martine appeals.

As we understand her arguments on appeal, Martine asserts: (1) there is evidence on the motion to support Martine's claim that the ski patroller Horn was negligent; (2) her action is not barred by the doctrine of primary assumption of risk; (3) the trial court erred in not allowing her to amend her complaint to allege negligence and damages arising from a second injury she incurred the same day while being taken off the mountain; and (4) the trial court erred in not granting her motion for a new trial.

We affirm the judgment.

## THE PROCEEDINGS

On March 2, 2011, Martine filed a Judicial Council of California form complaint alleging general negligence against Heavenly for injuries she suffered on March 23, 2009. Specifically, Martine alleged: "Heavenly is liable for the negligent transportation of an injured party. Ms. Martine injured her knee while skiing and called for ski patrol to transport her to the bottom of the mountain. She was loaded into a sled by ski patrol, who may have loaded her improperly. During her transport to the bottom of the mountain, ski patrol negligently failed to maintain control of the sled, causing it to slide down the mountain and into a tree. As a result of the accident, Ms. Martine suffered injuries to her head and leg."

Heavenly answered the complaint, asserting various affirmative defenses, including that Martine had assumed the risk for all injuries sustained and that her injuries "resulted from inherent risks of the activity in which [Martine] engaged and as to which [Heavenly] owed no duty."

2

On November 21, 2012, Heavenly brought its motion for summary judgment (Motion) arguing alternatively that Martine's complaint (1) was barred by the doctrine of primary assumption of risk, or (2) there was no evidence that Heavenly breached a duty of care and/or caused Martine's injuries.

Martine opposed the Motion, arguing: (1) the doctrine of primary assumption of risk "does not apply to the transportation of injured skiers by the ski resort's ski patroller" and (2) the doctrine of primary assumption of risk "does not apply to the transportation of injured skiers by the ski resort's ski patroller engaged in a common carrier activity charged with the duty of utmost care." As to her common carrier contention, Martine also argued that the doctrine of res ipsa loquitur applied, which would show negligence on the part of Heavenly's employee.

The trial court granted the motion for summary judgment and entered judgment for Heavenly ruling that Martine's action was barred by the doctrine of primary assumption of risk and that Heavenly was not acting in the capacity of a common carrier at the time of the accident.

Martine thereafter moved for a new trial arguing, in part, that there was newly discovered evidence. The trial court denied the motion.

THE FACTS

In its order granting summary judgment, the trial court set forth the following disputed and undisputed facts relevant to the motion. Neither party has challenged the trial court's statement of facts and, having reviewed the record on our own, we will adopt it as the statement of facts relevant to the motion for summary judgment.

"On March 23, 2009, plaintiff was skiing down Powder Bowl at Heavenly Mountain Resort. While skiing with friends, one of plaintiff's companions came out of her skis, and plaintiff called for the assistance of ski patrol. Plaintiff claims that while standing on the hill her kneecap 'moved out and back in.'

3

"Volunteer ski patroller Gustav 'Gus' Horn was dispatched to the scene of plaintiff's call for assistance. [Horn had] been a ski patroller, both paid and as a volunteer, for the [prior] twenty-eight years. He [had] been at Heavenly for ten years, and he [had] patrolled there over 100 days. [Horn was] a certified professional ski patroller and examiner in first aid, toboggan handling, and skiing, and [was] recertified every two years. [Horn was] trained in all aspects of patrolling, including patient care, toboggan transport, and first aid, and [was] tested on these skills each year by Heavenly. He receive[d] annual and ongoing on-hill training in all aspects of ski patrol including, but not limited to, toboggan training, toboggan training on steep slopes, first aid, and other areas.

"When [Horn] arrived at the scene, he conducted an assessment of plaintiff's reported injuries and called for a toboggan to be transported to him. When the toboggan arrived, [Horn] unpacked it and stabilized it. He applied a quick splint to plaintiff's left leg in accordance with his training and knowledge, [which included] immobilizing the area above and below the injury site, plaintiff's knee. [Horn] had plaintiff lay down in the toboggan inside a blanket roll. After plaintiff was in the toboggan, [Horn] placed a plastic cover or tarp over her, he placed her equipment on her non-injury side (her right side), and strapped her in using the straps provided on the toboggan.

"Heavenly contends that while [Horn] was skiing down the groomed and limited pitch terrain on Lower Mombo, three snowboarders emerged from the trees, off-piste to his right. [Fn. omitted.] While the snowboarders turned to their right, Heavenly claims the last snowboarder clipped [Horn's] right ski, causing him to fall. Based upon [Horn's] view, as the snowboarders turned right, they did so on their toe side edge, which put their backs to him. [Horn] tried to avoid a collision with the last snowboarder, but he was unsuccessful, and when he fell the toboggan rolled over. Heavenly alleges that the rollover caused some of plaintiff's equipment in the toboggin to hit her head.

4

"Plaintiff, however, contends there was no contact with any of the snowboarders, who she claims were downhill of [Horn]. Instead, plaintiff argues [Horn] lost control of the sled, and he was going too fast and fell. Plaintiff further asserts that [Horn's] reports indicate the incident did not involve any collision, and the toboggan tumbled instead of simply rolling over. Plaintiff also contends her initial head injuries were caused by the sled tumbling out of control and hitting a tree."

Heavenly asserts "[t]he rollover caused some of [Martine's] equipment in the toboggan to hit her head" while Martine contends her "initial head injuries were caused by the sled tumbling out of control and hitting a tree."

## DISCUSSION

### I

#### *Scope of Review*

As the California Supreme Court explained in *Aguilar v. Atlantic Ridgefield Co.* (2001) 25 Cal.4th 826 (*Aguilar*), "Under summary judgment law, any party to an action, whether plaintiff or defendant, 'may move' the court 'for summary judgment' in his favor on a cause of action (i.e., claim) or defense (Code Civ. Proc., § 437c, subd. (a)) . . . . The court must 'grant[]' the 'motion' 'if all the papers submitted show' that 'there is no triable issue as to any material fact' (*id.*, § 437c, subd. (c))--that is, there is no issue requiring a trial as to any fact that is necessary under the pleadings and, ultimately, the law [citations]--and that the 'moving party is entitled to a judgment as a matter of law' (Code Civ. Proc., § 437c, subd. (c)). The moving party must 'support[]' the 'motion' with evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.' (*Id.*, § 437c, subd. (b).) Likewise, any adverse party may oppose the motion, and, 'where appropriate,' must present evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may

5

'be taken.' (*Ibid*.) An adverse party who chooses to oppose the motion must be allowed a reasonable opportunity to do so. (*Id*., § 437c, subd. (h).)" (*Aguilar, at p.* 843.)

"In ruling on the motion, the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom (*id*., § 437c, subd. (c)), and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar*, 25 Cal.4th at p. 843.) "[I]f the court concludes that the plaintiff's evidence or inferences raise a triable issue of material fact, it must conclude its consideration and deny the defendant['s] motion." (*Aguilar*, 25 Cal.4th at p. 856.)

" 'The purpose of a summary judgment proceeding is to permit a party to show that material factual claims arising from the pleadings need not be tried because they are not in dispute.' (*Andalon v. Superior Court*, [(1984) 162 Cal.App.3d 600, 604-605].) 'The function of the pleadings in a motion for summary judgment is to delimit the scope of the issues: the function of the affidavits or declarations is to disclose whether there is any triable issue of fact within the issues delimited by the pleadings.' [Citations.] The complaint measures the materiality of the facts tendered in a defendant's challenge to the plaintiff's cause of action. [Citation.]" (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381.)

"A defendant . . . has met his . . . burden of showing that a cause of action has no merit if the party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to the cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto. The plaintiff . . . shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (Code of Civ. Proc., § 437c, subd. (p)(2).)

We review the record and the determination of the trial court de novo. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476; *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003; see also, *Miller v. Department of Correction*s (2005) 36 Cal.4th 446, 460.)

A motion for a new trial may be sought following an order on summary judgment, and the decision thereon is generally reviewed for an abuse of discretion. (*Aguilar*, 25 Cal.4th at pp. 858-859.)

## II

### *The Pleadings*

Given the law set forth above and to give structure to our opinion, we should first turn to the pleadings in this matter.

As we related earlier, Martine brought a complaint alleging against Heavenly a single cause of action for negligence in that she "injured her knee while skiing and called for ski patrol to transport her to the bottom of the mountain. She was loaded into a sled by ski patrol, who may have loaded her improperly. During her transport to the bottom of the mountain, ski patrol negligently failed to maintain control of the sled, causing it to slide down the mountain and into a tree."

As is apparent, Martine's sole cause of action sounds in negligence relying essentially on an allegation that Horn negligently failed to maintain control of the emergency sled in which she was riding, leading to her injuries. At its essence, Heavenly challenges the allegation of negligence arguing that there is no evidence of negligence on Horn's part and, even if he was simply negligent, that negligence is legally offset by the doctrine of primary assumption of risk. Martine's single pleading "delimits" the issues on the motion for summary judgment.

7

We recognize that Martine also contends that her pleading should be read broadly enough to encompass a claimed injury arising from being dropped when later being loaded on the ski tram. We reject that contention, *post*, as did the trial court.

Finally, we find that we need not address Martine's claim that she presented sufficient evidence on the motion to require a trial as to Heavenly's negligence in causing her injuries (or that Heavenly did not present enough evidence to find there was no triable issue of material fact on the question of negligence) because in this matter we find a defense based on the doctrine of the primary assumption of the risk dispositive.

III

*Primary Assumption of the Risk*

The trial court found, in part, that Martine voluntarily engaged in the activity of skiing and injured her knee while doing so. The court further found that Martine voluntarily summoned the ski patrol for help and voluntarily accepted the ski patrol's aid knowing that she and Horn risked interference from, or collisions with, other skiers or snowboarders as they descended the mountain.

As explained in *Knight v. Jewett* (1992) 3 Cal.4th 296 (*Knight*):

"As a general rule, persons have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person. (See Civ. Code, § 1714.) Thus, for example, a property owner ordinarily is required to use due care to eliminate dangerous conditions on his or her property. [Citations.] In the sports setting, however, conditions or conduct that otherwise might be viewed as dangerous often are an integral part of the sport itself. Thus, although moguls on a ski run pose a risk of harm to skiers that might not exist were these configurations removed, the challenge and risks posed by the moguls are part of the sport of skiing, and a ski resort has no duty to eliminate them. (See generally Annot. (1987) 55 A.L.R.4th 632.) In this respect, the

8

nature of a sport is highly relevant in defining the duty of care owed by the particular defendant." (*Knight, supra,* 3 Cal.4th at p. 315.)

Determining "the existence and scope of a defendant's duty of care is a *legal* question which depends on the nature of the sport or activity in question and on the parties' general relationship to the activity, and is an issue to be decided by the court, rather than the jury." (*Knight*, *supra*, 3 Cal.4th at p. 313.)

### A. Martine's Injury was Due to a Risk Inherent in the Sport of Skiing

"The risks inherent in snow skiing have been well catalogued and recognized by the courts" including "injuries from variations in terrain, surface or subsurface snow or ice conditions, moguls, bare spots, rocks, trees, and other forms of natural growth or debris" and "*collisions with other skiers*, ski lift towers, and other properly marked or plainly visible objects and equipment." (*Lackner v. North* (2006) 135 Cal.App.4th 1188, 1202, italics added.)

Martine argues that she and Horn were not participating in the active sport of skiing at the time of the accident. This argument is unpersuasive.

Martine was skiing on a ski run when she apparently hurt her knee and sought and secured assistance from the ski patrol. The possibility that Martine might injure herself while skiing and need assistance descending the mountain is one of the foreseeable risks of the sport of skiing. That one might be injured during that descent on a rescue toboggan are risks inherent in the sport of skiing.

Putting aside Martine's unsupported speculation as to the cause of the accident, the *facts* adequately supported by the evidence on the motion are that the person assisting Martine down the mountain fell after an encounter with snowboarders who emerged from the woods. Falling during skiing is a risk inherent to the sport. (*Kane v. National Ski Patrol System, Inc.* (2001) 88 Cal.App.4th 204, 214 ["Falling and thereby being injured or even killed are inherent dangers of skiing"].) And as noted earlier, collisions or near-

9

collisions with other skiers or snowboarders on the mountain are also inherent in the sport of skiing whether one is skiing or being taken off the mountain after being injured while skiing.

We conclude the trial court properly determined that Martine's claim for negligence is barred by the doctrine of primary assumption of risk.

B.    The Common Carrier Issue

Martine also argues primary assumption of the risk does not apply because, in carrying out her rescue from the mountain, the ski patrol was acting as a common carrier.

Whether the ski patroller rescuing Martine is a common carrier within the meaning of Civil Code section 2168 is a matter of law where the facts are undisputed. (*Squaw Valley Ski Corp. v. Superior Court* (1992) 2 Cal.App.4th 1499, 1506 (*Squaw Valley*) [ski resort operating chairlift is common carrier].)  The common carrier determination is significant because if it applies, it would impose a duty of the utmost standard of care. (See *Squaw Valley*, at pp. 1506-1507.)  Specifically, a common carrier must "do all that human care, vigilance, and foresight reasonably can do under the circumstances" (*id*. at p. 1507) to avoid injuring those that it carries.

Initially, we note that Martine's complaint is devoid of any allegations that Heavenly's ski patroller was acting as a common carrier at the time of her injury, nor does Martine's complaint contain facts sufficient to establish the applicability of the common carrier doctrine.  Thus, it is unclear whether Martine may use the doctrine's application to avoid summary judgment on her general negligence claim because Heavenly was not required to refute liability on theoretical issues not raised in the complaint.  (See *Hutton v. Fidelity National Title Co*. (2013) 213 Cal.App.4th 486, 793 ["the burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint*"], italics in original; *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258 [a party seeking to

expand issues presented by the complaint must do so by amending the complaint, not by way of opposition papers alone].)

In any event, as recognized in *Squaw Valley*, Civil Code section 2168 provides the definition of common carrier applicable to tort actions and states "[e]veryone who offers to the public to carry persons, property, or messages, excepting only telegraphic messages is a common carrier of whatever he thus offers to carry." (*Squaw Valley*, *supra*, 2 Cal.App.4th at p. 1507.)

In deciding whether Heavenly is a common carrier, a court may properly consider whether (1) the defendant maintains a regular place of business for the purpose of transportation; (2) the defendant advertises its services to the general public; and (3) the defendant charges standard fees for its services. (Judicial Council of California Civil Jury Instruction 901; *Gradus v. Hanson Aviation* (1984) 158 Cal.App.3d 1038, 1048 [applying these factors].)

Here, Martine put forth no facts that Heavenly (1) maintained a business for transporting injured patrons to the bottom of the mountain, (2) advertised such service, or (3) charged for that service. Nor did Martine state separate facts alleging that Heavenly offered descent from the mountain to the public generally. Accordingly, Martine's common carrier argument necessarily fails. (See *Blackman v. Burrows* (1987) 193 Cal.App.3d 889, 894-895 [refusing to consider factual contentions contained within the memorandum in opposition, but not set forth in a separate statement of facts].) Further, descent from a mountain via rescue sled operated by ski patrol is distinguishable from the ski lifts discussed in *Squaw Valley* because unlike the lifts that indiscriminately "carry skiers at a fixed rate from the bottom to the top" of the mountain, rescue patrollers, at a patroller's discretionary election, transport injured skiers without any apparent compensation to the bottom of the mountain. (Compare *Squaw Valley*, *supra*, 2 Cal.App.4th at p. 1508.)

11

At oral argument, Martine relied upon *Regents of the University of California v. Superior Court* (2018) 4 Cal.5th 607 (*Regents*) to argue Heavenly was liable because either it acted as a common carrier by providing the ski patrol service or it had a special relationship with Martine like a common carrier has with its passengers. *Regents* does not support either argument. First, the case does not concern a common carrier's duty; rather, it decided whether a university has a special relationship with its students requiring it to protect them from foreseeable violence. (*Id*. at p. 620.) Nothing in the case suggests a ski resort becomes a common carrier by providing ski patrol to remove injured skiers from the mountain.

Second, *Regents* cannot be read to create a special relationship imposing an affirmative duty to warn and protect others of inherent dangers where the plaintiff assumes a risk of injury by intentionally engaging in dangerous activity. By assuming the risk, the plaintiff negates the defendant's duty of care as well as any affirmative duty to protect. "By an express assumption of risk, the potential plaintiff agrees not to expect the potential defendant to act carefully, thus eliminating the potential defendant's duty of care, and acknowledging the possibility of negligent wrongdoing." (*Coates v. Newhall Land & Farming, Inc.* (1987) 191 Cal.App.3d 1, 7.) It is no surprise that *Regents* did not discuss assumption of the risk, as attending a university, unlike skiing, is not an inherently dangerous activity. *Regents* is irrelevant to this case.

Martine relied on another case at oral argument, *Hass v. RhodyCo Productions* (Aug. 13, 2018, A142418) __ Cal.App.5th __ [2018 WL 3830002], that also does not aid her. There, the court of appeal ruled the primary assumption of the risk doctrine did not bar the plaintiffs' claim for gross negligence arising from a foot race operator's alleged breach of its duty to minimize the race's extrinsic risks without altering the race's nature. (*Id*. at p. 14.) The case does not apply here, as Martine did not contend in opposing the summary judgment motion that Heavenly was grossly negligent.

Because we have found the trial court properly granted summary judgment of Martine's claims through application of the doctrine of assumption of risk, we need not address Martine's argument that the trial court erred in excluding evidence intended to show that Martine's rescuer's conduct was merely negligent under either principles of ordinary negligence or application of the law of common carriers.

## IV

### *The Scope and Amendment of Martine's Complaint*

Martine argues the trial court erred in not allowing her to amend her complaint to allege negligence and damages arising from a second injury she incurred the same day while being taken off the mountain. Again, we are unpersuaded.

In an attempt to circumvent the application of the doctrine of primary assumption of risk, Martine argues that her complaint should have been liberally construed to include a second injury occurring while waiting for the tram, offering as a rationale for that argument that her complaint invoked "all head trauma damages" sustained on the day of the accident.

We note first that Martine never filed a motion to amend her complaint nor did she offer a proposed amended pleading.

The allegations of the complaint as set forth, *supra,* clearly concern only the accident on the ski run wherein it is alleged that her rescuer negligently lost control of the rescue sled thus injuring Martine when she hit a tree. There is no allegation that she sustained additional injuries when she was later dropped when being loaded on the tram. We reject, as did the trial court, her late-to-dinner effort to significantly expand her factual allegations beyond the complaint she filed, which expansion necessarily would import new legal theories and new defenses into the lawsuit she chose to file.

13

V

*The New Trial Motion*

Martine argues the trial court erred in denying her new trial motion. Because the decision of the trial court is presumptively correct, Martine has the burden of overcoming that presumption by affirmatively demonstrating trial court error. (*Lankster v. Alpha Beta Co.* (1993) 15 Cal.App.4th 678, 683 [ruling on new trial motion is presumptively correct unless error established gives rise to a presumption of prejudice].)

This includes the duty to separately identify under appropriate headings each assertion of trial court error. (Cal. Rules of Court, rule 8.204(a)(1)(B).) Contrary to this duty, Martine placed argument concerning her motion for a new trial under the heading "Heavenly Has the Substantive Burden on Appeal to Establish that it is Entitled to Summary Judgment."

Whether the trial court erred in granting the motion for summary judgment is a separate question from whether it also erred in denying the new trial motion. (Code of Civ. Proc., §§ 437c, 657.) Thus, Martine's headings and poor organization undermine this court's review and cause us to question whether Martine is entitled to review of these assertions at all. (See *Phillips v. Honeywell Internat. Inc.* (2017) 9 Cal.App.5th 1061, 1077 [challenge to authenticity not subsumed in heading concerning relevancy and prejudice].)

Putting this issue aside, Martine's arguments for a new trial may be divided into two categories: (1) those waived because they were not raised in the trial court and (2) those forfeited because Martine has failed to provide cogent facts and legal analysis demonstrating trial court error.

" 'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. . . .'

14

[Citations.]" (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 [appellant's failure to raise specific challenges in trial court resulted in their forfeiture on appeal].) Therefore, we will not consider Martine's claims concerning irregularities in the proceedings and/or surprise which ordinary prudence would not guard against because Martine's motion in the trial court did not argue these issues.

Further, "[i]t is the responsibility of the appellant, here [Martine], to support claims of error with meaningful argument and citation to authority. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.) When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration. (*Okasaki v. City of Elk Grove* (2012) 203 Cal.App.4th 1043, 1045, fn. 1; *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656.) In addition, citing cases without any discussion of their application to the present case results in forfeiture. (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862; *Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 482-483.) We are not required to examine undeveloped claims or to supply arguments for the litigants. (*Maral v. City of Live Oak* (2013) 221 Cal.App.4th 975, 984-985; *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 546 [it is not the court's function to serve as the appellant's backup counsel].)" (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)

Martine's remaining new trial arguments concerning the discovery of new evidence, the sufficiency of the evidence, the trial court's decision being against the law, and that there was an error in law are forfeited for failure to supply cogent and supported argument with citations to the record affirmatively demonstrating error.

15

DISPOSITION

The judgment is affirmed.  Heavenly is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

                                                        HULL              , J.

We concur:

        BLEASE         , Acting P. J.

        ROBIE          , J.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| TERESA MARTINE,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>HEAVENLY VALLEY LIMITED PARTNERSHIP,<br><br>Defendant and Respondent. | C076998<br><br>(Super. Ct. No. SC20110037)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

APPEAL from a judgment of the Superior Court of El Dorado County, Steven C. Bailey, Judge.  Affirmed.

Bradley Paul Elley for Plaintiff and Appellant.

Duane Morris LLP, John E. Fagan, Michael L. Reitzell, and Kristin M. Bohm for Defendant and Respondent.

THE COURT:

The opinion in the above-entitled matter filed on September 4, 2018, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:


        BLEASE            , Acting P. J.


        HULL             , J.


        ROBIE            , J.

2